# Illinois Official Reports

## Appellate Court

---

*PNC Bank, National Ass'n v. Krier*, 2015 IL App (3d) 140639

---

| | |
|---|---|
| Appellate Court Caption | PNC BANK, NATIONAL ASSOCIATION, Plaintiff-Appellee, v. JOSEPH W. KRIER, Defendant-Appellant (Five Ten Illinois IV LLC, Intervenor-Appellee). |
| District & No. | Third District<br>Docket No. 3-14-0639 |
| Rule 23 order filed | July 6, 2015 |
| Rehearing denied | August 11, 2015 |
| Motion to publish allowed | August 24, 2015 |
| Opinion filed | August 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-CH-3704; the Hon. Richard Siegel and the Hon. Thomas Thanas, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph Krier, of Joliet, appellant *pro se*.<br><br>Jonathan M. Boulahanis and Katie Simpson-Jones, both of Clark Hill PLC, of Chicago, and Jaclyn Hilderbrand, of Codilis & Associates, P.C., of Burr Ridge, for appellee PNC Bank, N.A.<br><br>Kenneth S. Strauss, Vanessa E. Seiler, Hal R. Morris, Jenifer H. Caracciolo, and Elizabeth A. Thompson, all of Arnstein & Lehr LLP, of Chicago, for appellee Five Ten Illinois IV LLC. |

| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion. Justices Carter and Lytton concurred in the judgment and opinion. |
| --- | --- |

**OPINION**

¶ 1     The circuit court granted plaintiff PNC Bank, N.A.'s (PNC) motion for summary judgment and entered a judgment for foreclosure and sale against defendant Joseph W. Krier. After the judicial sale, PNC filed a motion to confirm or approve the sale. Thereafter, Krier filed a motion to vacate the judgment of foreclosure and set aside the judicial sale. The court denied Krier's motion to vacate the judicial sale and the judgment of foreclosure, and entered orders affirming the judicial sale. We affirm.

¶ 2                                         BACKGROUND

¶ 3     On December 29, 2003, Krier entered into a residential mortgage agreement and loan in the amount of $171,600 with National City Mortgage Co. (the 2003 mortgage), secured by the real estate located at 1706 Foxfield Drive, Joliet, Illinois (the Foxfield real property). The 2003 mortgage and promissory note were recorded in the Will County Recorder's Office on January 15, 2004.[1] A balloon rider was included as part of the 2003 mortgage and note. The mortgage required Krier to pay the loan "in full" by the maturity date of January 1, 2011.

¶ 4     Krier applied to refinance the 2003 loan through PNC Mortgage, a division of PNC Bank, N.A., the successor in interest to the National City Mortgage Co. On May 21, 2010, PNC issued a new 30-year mortgage (the 2010 mortgage), loan and note, secured by the 1706 Foxfield real property, in the amount of $156,000.[2] Pursuant to the mortgage refinance agreement, the new 2010 loan paid off the existing balance of the 2003 mortgage and note in the amount of $153,736.83.[3] The new 2010 mortgage and note were recorded at the Will County Recorder's Office on June 2, 2010.

¶ 5     The 2010 mortgage required Krier to make monthly installment payments in the amount of $1,352 beginning July 1, 2010. Without challenging the authenticity of his signature on the 2010 loan agreement, Krier paid these monthly installments from July 1, 2010, until February 1, 2012, when he first defaulted on his mortgage payments.

¶ 6     On July 10, 2012, PNC filed a "Complaint to Foreclose [the 2010] Mortgage" (complaint for foreclosure) against Krier and his wife at the time, Christine Krier (Christine), pursuant to section 15-1101 of the Code of Civil Procedure (Code). 735 ILCS 5/15-1101 (West 2012). The complaint for foreclosure alleged Krier defaulted on the installment payments under the terms of his 2010 mortgage and note by failing to pay monthly installments of principal, taxes, interest, and insurance from February 1, 2012, to the present.

---

[1]For purposes of this appeal, the last four digits of the number assigned to this loan are 7411 (the 2003 loan).

[2]The last four digits of the number assigned to this loan are 6491 (the 2010 loan).

[3]PNC was successor in interest to the 2003 loan originally issued by National City Mortgage Co.

¶ 7    Krier appeared in court *pro se* on the complaint for foreclosure and participated in the Residential Foreclosure Mediation Program as required by local court rules. [4] The pre-mediation report filed on August 29, 2012, indicated that Krier requested a forbearance on the 2010 loan payments because he filed for bankruptcy after becoming unemployed. The pre-mediation program was terminated unsuccessfully on October 10, 2012.

¶ 8    In January of 2013, the court granted Krier additional time to file an amended answer to PNC's complaint for foreclosure. Krier's amended answer challenged the authenticity of the 2010 mortgage and note, claiming his signature was forged on those documents. In general, Krier attempted to plead five affirmative defenses including: (1) the complaint failed to state a cause of action; (2) PNC was not the owner of the 2010 mortgage in question; (3) PNC was not the holder of the promissory note securing the 2010 mortgage; (4) PNC failed to give adequate notice that Krier was in default; and (5) PNC did not properly complete the 2010 mortgage, deed, and note in good faith.

¶ 9    On June 5, 2013, the court dismissed Christine, Krier's ex-wife, as a party-defendant to this action. PNC filed a motion to strike Krier's affirmative defenses on June 26, 2013, on the grounds that Krier's pleading did not contain sufficient facts supporting his affirmative defenses. On September 18, 2013, the court granted PNC's motion to strike all of Krier's affirmative defenses. The court also extended the time for PNC to respond to Krier's pending discovery requests.

¶ 10    On October 4, 2013, PNC filed a motion for summary judgment. The next day, October 5, 2013, Krier filed a second motion to dismiss PNC's foreclosure complaint based on PNC's failure to comply with Krier's discovery requests.

¶ 11    On October 11 and October 15, 2013, PNC answered Krier's discovery requests. On October 23, 2013, the court found PNC satisfied Krier's requests for discovery and denied Krier's motion to dismiss regarding PNC's purported delayed production of discovery.

¶ 12    At a status hearing on November 27, 2013, the court allowed Krier seven additional days to file a response to PNC's motion for summary judgment originally filed on October 4, 2013. Krier filed an unverified response to PNC's motion for summary judgment on December 4, 2013. Krier's unverified response to summary judgment alleged Krier did not sign the 2010 mortgage documents and was in the process of filing additional motions for discovery to help prove his affirmative defenses.[5] Krier contended granting summary judgment for PNC would cause prejudice to Krier.

¶ 13    On December 11, 2013, before the hearing on the merits of PNC's motion for summary judgment, the court noted that Krier's response to the motion for summary judgment was on file without a Rule 191 affidavit requesting further time for discovery as required by supreme court rules. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013). Krier responded that he did not know he needed to file a separate affidavit in support of his request to postpone the hearing on summary judgment. Krier argued that he needed to locate the notary who verified his signature on the 2010 mortgage and note, which Krier claimed was forged. PNC advised the court the notary

---

[4]Krier remained *pro se* throughout the proceedings on PNC's complaint for foreclosure until March of 2014, when an attorney entered his appearance on Krier's behalf and filed a motion to vacate the judgment of foreclosure and set aside the judicial sale.

[5]Defendant's affirmative defenses were previously stricken by the court on September 18, 2013, and defendant did not file any amended pleadings alleging affirmative defenses.

was not an agent of the bank, therefore, PNC did not have access to the notary. PNC suggested the notary may have been an agent with the title company at a real estate closing.

¶ 14     During the hearing on PNC's motion for summary judgment, PNC argued that Krier did not contest his signature when the bank applied the 2010 loan to pay off the balance and release of Krier's 2003 note and loan. PNC also asked the court to take judicial notice of a copy of Krier's 2010 bankruptcy court documents, wherein Krier named PNC as a secured creditor regarding a PNC mortgage.

¶ 15     Krier made reference to the same undisputed bankruptcy document in support of his contention that his bankruptcy document listed the loan number for his 2003 mortgage and note alone. According to Krier, his reference to only the 2003 loan number supported his argument that he did not sign the new 2010 mortgage, note, and loan with PNC.

¶ 16     The court granted PNC's motion for summary judgment and entered a Judgment of Foreclosure and Sale in favor of PNC and against Krier on December 11, 2013, in the amount of $177,539.50. This judgment order noted that Krier "has filed a Chapter 7 bankruptcy and is not subject to any personal deficiency." The judgment of foreclosure provided the redemption period expired on March 12, 2014.

¶ 17     On February 26, 2014, the court denied Krier's motion to reconsider the granting of summary judgment and entry of judgment for foreclosure and sale on behalf of PNC.[6] Subsequently, on March 5, 2014, Krier retained an attorney who entered his appearance on Krier's behalf.

¶ 18     Krier's attorney filed a Motion to Stay Judicial Sale on March 7, 2014, which the trial court denied on March 12, 2014. The judicial sale of the Foxfield real property occurred on March 13, 2014. "Five Ten Illinois IV LLC" (Five Ten) bought the Foxfield real property during this judicial sale. On March 14, 2014, PNC filed a motion for an order approving the report of sale and distribution.

¶ 19     Thereafter, on March 19, 2014, Krier's attorney filed a "Section 2-1301(e) Motion to Vacate Judgment of Foreclosure and Sale and Other Relief" (motion to vacate).[7] After PNC filed a response to the motion to vacate, the court allowed Krier's motion to amend his original motion to vacate by interlineation, to request relief under either section 2-1301(e) or section 15-1508(b) of the Code. 735 ILCS 5/2-1301(e), 15-1508(b) (West 2012).

¶ 20     At the June 4, 2014, hearing on the motion to vacate, Krier claimed his 2010 bankruptcy filing only referenced the 2003 mortgage and note, bearing the last four digits of loan number "7411," rather than the 2010 mortgage and note, bearing the last four digits of loan number "6491." At the close of the hearing, the court found that the "differing loan numbers are not a critical issue," and "Judge Siegel's finding on 12/11/13 that Krier ratified the second loan [2010 mortgage and note] (#0006286491) is well grounded in both fact and law." The court

---

[6]Judge Siegel was assigned to this case until the end of December 2013. In February of 2014, Judge Thanas presided over this case, including hearing the motion to reconsider Judge Siegel's order granting summary judgment and entering the judgment of foreclosure and sale. Presumably, this is due to a reassignment of cases by the judiciary because the record does not indicate another reason for a different judge to be reassigned to the remainder of this case.

[7]Krier's attorney attached a "Certification of Warren Spencer," a forensic document examiner, providing Spencer's opinion that Krier's signature on the 2010 mortgage documents was not genuine.

- 4 -

then denied Krier's motion to vacate in its entirety without qualifying whether his ruling was pursuant to section 2-1301(e) or section 15-1508(b) or both.

¶ 21    Also in the order of June 4, 2014, the court granted Five Ten's petition to intervene as the buyer of the Foxfield real property. The court set a hearing date for PNC's and Five Ten's motion requesting an order approving the report of judicial sale and distribution and motion for possession of the real property.

¶ 22    Subsequently, on July 9, 2014, the court entered an order approving the March 13, 2014, sale of the Foxfield real property to Five Ten and granted Five Ten possession of the property effective 60 days from the date of the order. On July 17, 2014, Krier filed a "Motion for Reconsideration" asking the court to reconsider the July 9, 2014 order approving the sale, as well as the June 4, 2014 order denying Krier's motion to vacate. The court denied Krier's motion to reconsider in its entirety on August 6, 2014. Krier filed a notice of appeal on August 15, 2014.

¶ 23    During the pendency of this appeal, Krier filed an emergency motion to stay the execution of the July 9, 2014, order approving the judicial sale and granting possession to the new buyer. On November 14, 2014, this court granted a temporary stay of the execution of the final July 9, 2014, order pending appeal without requiring Krier to post a bond. Subsequently, on April 20, 2015, Five Ten, the intervenor and buyer of the Foxfield real property at the judicial sale, filed a motion asking this court to approve the March 2, 2015, recording of the sheriff's deed issued to Five Ten for the real estate at issue. This motion remains pending in the case at bar.

¶ 24                                            ANALYSIS

¶ 25    Krier's notice of appeal challenges the rulings with respect to the court's order granting summary judgment in favor of PNC and the entry of the judgment of foreclosure and sale on December 11, 2013. Krier also challenges the order denying Krier's motion to vacate the judgment of foreclosure and the order approving the judicial sale. PNC contends the trial court properly entered the judgment of foreclosure and sale, approved the judicial sale, and denied Krier's motion to vacate the judgment of foreclosure and set aside the judicial sale.

¶ 26                                     I. Summary Judgment

¶ 27    Krier contends the trial court erred by granting the motion for summary judgment because a question of material fact existed concerning the authenticity of the 2010 mortgage and note. In addition, Krier contends the judgment of foreclosure should be vacated by this court and the judicial sale set aside because PNC perpetrated a fraud upon the court.

¶ 28    Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *First Midwest Bank v. Thunder Road, Inc.*, 359 Ill. App. 3d 921, 923-24 (2005). We review the trial court's grant of summary judgment *de novo. General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002).

¶ 29    Based on our *de novo* review of the record, we are mindful that Krier did not file a counteraffidavit in opposition to PNC's motion for summary judgment. Consequently, the affidavits and documentation submitted by PNC were unrefuted and no genuine issue of

material fact existed that would prevent entry of summary judgment. See 735 ILCS 5/2-1005(c) (West 2012).

¶ 30 However, in the interest of a complete analysis, we have reviewed the documentation in support of PNC's request for summary judgment. The supporting documents reveal the 2003 mortgage and note required Krier to make a balloon payment to pay off the 2003 loan "in full" by the maturity date of January 1, 2011. In support of the request for summary judgment, PNC included documentation that the 2003 mortgage and note were paid off by applying the proceeds of the 2010 loan to the balance due on May 21, 2010, well in advance of the maturity date for the 2003 transaction.

¶ 31 The new 2010 mortgage required Krier to make monthly installment payments in the amount of $1,352 beginning July 1, 2010. Without challenging the authenticity of his signature on the 2010 mortgage and note, Krier paid the monthly installments in that amount beginning on July 1, 2010. He continued to make these payments for more than a year beyond the maturity date of the 2003 mortgage and note and first defaulted on his 2010 installment payments beginning on February 1, 2012.

¶ 32 We conclude the trial court properly granted summary judgment in favor of PNC and against Krier as a matter of law. Accordingly, the judgment for foreclosure and sale was properly entered pursuant to summary judgment.

¶ 33                  II. Motion to Vacate Judgment of Foreclosure and Set Aside Judicial Sale

¶ 34 Krier's "Section 2-1301(e) Motion to Vacate Judgment of Foreclosure and Sale and Other Relief" was filed by newly-retained counsel on March 19, 2014. The motion sought to vacate both the judgment of foreclosure entered on December 11, 2013, and the judicial sale that occurred on March 13, 2014. Prior to the hearing, Krier amended his motion to vacate asking for relief under section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2012)) or alternatively under section 15-1508(b) of the Code (735 ILCS 5/15-1508(b) (West 2012)).

¶ 35 We first note that section 2-1301(e) of the Code deals with default judgments entered against a party. 735 ILCS 5/2-1301(e) (West 2012). Here, Krier was present throughout the proceedings and the court did not enter a default judgment against him. Thus, we conclude section 2-1301(e) has no application. Next we examine whether section 15-1508(b) of the Code would require the trial court to vacate the judgment of foreclosure.

¶ 36 Our supreme court has held that, "after a motion to confirm the judicial sale has been filed, a borrower seeking to set aside a default judgment of foreclosure may only do so by filing objections to the confirmation of the sale under the provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 27. Thus, as in the case at bar, after completion of a judicial sale and the filing of a motion to confirm the sale, the court has discretion to vacate the underlying judgment of foreclosure only if it denies confirmation of the sale as provided by the mandatory provisions of section 15-1508(b). 735 ILCS 5/15-1508(b) (West 2012); *McCluskey*, 2013 IL 115469, ¶¶ 18, 27.

¶ 37 Our supreme court has applied the foreclosure laws stating, "Once a judgment of foreclosure has been entered and the borrower's reinstatement and redemption rights have expired, the property shall be sold at a foreclosure sale unless the lender agrees to accept other terms." *Id.* ¶ 24; see also 735 ILCS 5/15-1603(h), 15-1507(a) (West 2012). Moreover, under section 15-1508(b), "the court *shall* confirm the sale unless the court finds that: (i) proper

notice of the sale was not given; (ii) the terms of the sale were unconscionable; (iii) the sale was conducted fraudulently; or (iv) justice was otherwise not done." (Emphasis in original.) *McCluskey*, 2013 IL 115469, ¶ 18; see also 735 ILCS 5/15-1508(b) (West 2012). We review a trial court's decision to confirm or vacate a judicial sale for an abuse of discretion. *McCluskey*, 2013 IL 115469, ¶ 25; *Deutsche Bank National Trust Co. v. Snick*, 2011 IL App (3d) 100436, ¶ 11.

¶ 38    In this case, Krier's motion to vacate the judgment was filed on March 19, 2014, *after* the completion of the judicial sale on March 13, 2014, and the filing of PNC's motion to confirm the sale on March 14, 2014. To vacate both the judicial sale and the underlying judgment of foreclosure, it is not sufficient for the borrower to merely raise a meritorious defense to the underlying foreclosure complaint. *McCluskey*, 2013 IL 115469, ¶ 26. Under section 15-1508(b)(iv), the borrower must prove "that justice was not otherwise done *because* either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests." (Emphasis added.) *Id.*[8]

¶ 39    In this case, the record does not establish that PNC prevented the borrower from raising a meritorious defense of fraud to defeat the complaint for foreclosure or "that justice was not otherwise done" pursuant to section 15-1508(b)(iv). Instead, the record reveals Krier may have hampered himself by acting *pro se* until well after the entry of the judgment of foreclosure and retaining capable counsel on March 5, 2014, when the date of the judicial sale was fast approaching on March 13, 2014.

¶ 40    Throughout these proceedings, the trial judge was particularly mindful of Krier's lack of legal experience and even afforded Krier extra time to file a response to PNC's motion for summary judgment. However, Krier did not file a counteraffidavit in opposition to the motion for summary judgment. Moreover, during the summary judgment hearing, the trial court generously gave Krier the opportunity to argue that his signatures on the 2010 mortgage and note were forged, even though he had not filed a counteraffidavit with respect to PNC's request for summary judgment.

¶ 41    This record does not include any indication that PNC, through fraud or misrepresentation, prevented Krier from raising his purported meritorious defenses to defeat the complaint prior to the entry of the judgment of foreclosure or that PNC otherwise prevented Krier from protecting his property interests. Therefore, we conclude the trial court did not abuse its discretion by denying Krier's motion to vacate the sale and the judgment of foreclosure. Based upon our decision, we grant Five Ten's appellate motion and allow the March 2, 2015, recording of the sheriff's deed for the Foxfield real property to stand.

¶ 42    Krier also raises issues in his appellate brief regarding PNC's unclean hands, lack of standing, and the court's improper sealing of the court file. These issues are similar to the affirmative defenses Krier unsuccessfully attempted to plead while acting *pro se*. In his notice of appeal, Krier has not challenged the orders striking his affirmative defenses or sealing the court file. Our jurisdiction is limited to the review of the specific orders identified in

_____

[8]For example, this court has held it was insufficient and far too late to assert the affirmative defense of standing where the plaintiff had already moved for confirmation of the judicial sale that had already occurred. *Deutsche Bank*, 2011 IL App (3d) 100436, ¶ 9.

defendant's notice of appeal, and any orders that were part of the procedural progression leading to the orders challenged in the notice of appeal. See *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979). Therefore, we will not address those issues.

¶ 43                                                    CONCLUSION
¶ 44            For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 45            Affirmed.